200 N.J. Super. 177 (1985)
491 A.2d 10
AUGUST E. KEECH AND HELEN M. KEECH, PLAINTIFFS-RESPONDENTS,
v.
LAPOINTE MACHINE TOOL COMPANY, DEFENDANT-APPELLANT, AND EX-CELL-O CORPORATION AND GARDEN STATE MACHINE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 11, 1985.
Decided April 4, 1985.
*179 Before Judges MORTON I. GREENBERG, O'BRIEN and GAYNOR.
Frederic S. Kessler argued the cause for appellant (Clapp & Eisenberg, attorneys; Arnold K. Mytelka, of counsel; Frederic S. Kessler on the brief).
Brian Coyle argued the cause for respondent Keech (Harwood, Lloyd, Ryan, Coyle & McBride, attorneys; Brian Coyle on the brief).
Ex-Cell-O Corporation and Garden State Machine Company did not file briefs.
The opinion of the court was delivered by GAYNOR, J.A.D.
In this product liability case, defendant, LaPointe Machine Tool Company (LaPointe) appeals by leave from the denial of its motion to dismiss the complaint for lack of in personam jurisdiction, contending that its contacts with New Jersey were *180 insufficient to sustain the exercise of long-arm jurisdiction. We agree and reverse.
On August 11, 1978 plaintiff, August Keech, during the course of his employment at Garden State Machine Company, slipped on cutting fluid which had splashed on the floor allegedly because of the faulty design of a 1,000 lb. hydraulic broaching machine manufactured by LaPointe, and subsequently instituted this suit to recover for injuries thereby sustained. The machine had been sold by LaPointe in 1955 to a machine company in Oklahoma and, after having been resold on several occasions, was purchased by Keech's employer in 1960 and picked up in Chicago.
LaPointe is a Massachusetts corporation, incorporated in 1917, and thereafter engaged in the manufacture and sale of hydraulic broaching machines and parts at its place of business in that state until 1972 when it discontinued conducting business in the United States. At that time it had entered into certain agreements with Ex-Cell-O Corporation involving the purchase of LaPointe assets, the licensing of technical information and the assumption of certain warranty obligations. LaPointe was not authorized to do business in New Jersey, nor did it at any time maintain an office or a telephone listing in this State. However, prior to 1972, the company employed sales or service agents whose territory included New Jersey and had an authorized sales representative in New Jersey who was paid on a commission basis. During its period of operation in the United States, LaPointe sold hydraulic broaching machines and spare parts, either directly or through its authorized distributors, for ultimate use by customers in many states including New Jersey. Nevertheless, it was able to document only one sale of a hydraulic broaching machine to a customer in New Jersey. This sale took place in October 1971 and its last recorded sale of spare parts in New Jersey was in 1972. It has no record of any sale or shipment into New Jersey of the type of broaching machine which allegedly caused Keech's injury.
*181 Plaintiff contends the exercise of jurisdiction over LaPointe would be consistent with due process as this defendant had availed itself of benefits derived from transactions in this State and, having done business on a nationwide scale, could anticipate that its products would be purchased by persons in New Jersey and thus could reasonably expect to be haled into court here for claims arising from the use and operation of its machines. Additionally, it is argued that LaPointe's activities in New Jersey were continuous and substantial and that jurisdiction was invocable despite its termination of business in New Jersey, as plaintiff's cause of action arose from LaPointe's prior activities in this State. Plaintiff also suggests that New Jersey has an interest in assuring its residents of a forum which can most fairly and efficiently adjudicate the dispute between the parties and claims the denial of jurisdiction in this case would result in a mockery of justice.
These contentions are disputed by LaPointe who asserts that the exercise of jurisdiction by New Jersey cannot constitutionally be sustained as its contacts with New Jersey were insufficient to subject it to suit for all purposes nor was there a substantial connection with this State arising out of the transaction giving rise to plaintiff's action. Further, it argues that having withdrawn from any business connection with New Jersey several years prior to plaintiff's accident it may not be required to defend this action as it did not arise from any prior business done in this State.
It is well established that New Jersey permits long-arm jurisdiction over nonresidents to the utmost limits allowed by the Due Process Clause of the United States Constitution. R. 4:4-4(c)(1); Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971); Kislak, Inc. v. Trumbull Shopping Park, 150 N.J. Super. 96, 98 (App.Div. 1977). Due process requires only that in order to subject a foreign defendant to a judgment in personam there must be certain minimum contacts with the forum so that maintenance of the suit does not offend "traditional notions of *182 fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). As explained in Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958), this requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." If the activities are of a continuous and substantial nature, then jurisdiction may be invoked by reason of these general business contacts with the forum state, or, if the suit arises out of an act or transaction having a substantial connection with the forum, jurisdiction may be founded upon this transactional contact. Helicopteros Nacionales de Colombia v. Hall, ___ U.S. ___, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). However, the mere foreseeability that the conduct of a defendant would have some business effects in the forum state is not sufficient to support jurisdiction. Rather, a defendant's connection with that state must be such that it "should reasonably anticipate being haled into court" there in the event of a dispute. While an isolated transaction involving the forum state will not subject a nonresident to personal jurisdiction on the ground that it had availed itself of the privilege of conducting activities within that state, such jurisdiction may be asserted over a manufacturer or distributor which delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
A manufacturer may terminate its business connection with a state and thereby eliminate the risk of being sued there, except with respect to causes of action arising from the business previously carried on in that state. Restatement, Conflict of Laws 2d § 48 at 177 (1971); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501. See also Cordts v. Beneficial Loan Soc., 34 F. Supp. 197 (D.N.J. 1940). As explained in Comment a. of the cited section of the Restatement:

*183 It is reasonable that a corporation, even after its withdrawal from a state, should remain subject to the judicial jurisdiction of that state as to causes of action arising from the business it did there. A state's jurisdiction in such a case is limited to causes of action arising from the business done by the corporation within its territory; its jurisdiction does not extend to causes of action unrelated to this business.
Here, plaintiff concedes that his employer did not purchase the hydraulic broaching machine from LaPointe for use in New Jersey but maintains that jurisdiction should be upheld as LaPointe's contacts with this State were of a continuous and substantial nature and his cause of action is related to those contacts. The facts do indicate that from 1957 to 1972, LaPointe had notable contacts with New Jersey. It employed a salesman whose territory included New Jersey and was represented in this State by an authorized sales representative. It advertised in trade journals which might have circulated here and at least one broaching machine as well as spare parts were sold to customers in New Jersey during 1971 and 1972. These contacts were sufficient to subject LaPointe to the exercise of general jurisdiction by this State during the period ending in 1972, but not thereafter. See Corporate Dev. Spe., Inc. v. Warren-Teed Pharm., Inc., 102 N.J. Super. 143 (App.Div. 1968) certif. den. 52 N.J. 535 (1968); Radigan v. Innisbrook Resort and Golf Club, 150 N.J. Super. 427 (App.Div. 1977); Blessing v. Prosser, 141 N.J. Super. 548 (App.Div. 1976); Restatement, Conflict of Laws 2d § 48 at 177 (1971).
Having terminated any business connection with New Jersey in 1972, LaPointe would now be subject to the jurisdiction of this State only as to causes of action arising from the business it had conducted in New Jersey. This would entail the invoking of "specific jurisdiction," i.e., where the cause of action arose out of an act or transaction having a substantial connection with the forum. Thus in the present case jurisdiction would have to be based upon the sale of the machine in 1955 and LaPointe's expectation that it would eventually be purchased by plaintiff's employer and put into operation in New Jersey. However, the sale does not warrant such conclusion as LaPointe *184 shipped the machine to Oklahoma for purchase and use by the Oklahoma customer and had no reason to expect that the machine would ultimately be purchased by a user in New Jersey. It had not placed this broaching machine into the stream of commerce as part of a nationwide marketing effort. Rather, the sale and delivery of the machine to the Oklahoma company was in the nature of an isolated occurrence and it was merely fortuitous that it ultimately was brought into New Jersey. As we learn from World-Wide:
... the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501.
Accordingly, the sale of the machine in 1955 was not a substantial connection with New Jersey and thus was not cause for LaPointe to reasonably anticipate being subject to suit here in 1980 because of an alleged defect in the design and manufacture of the machine. To hold otherwise would be offensive to traditional notions of fairness, substantial justice and reasonableness. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490.
Plaintiff's reliance on Certisimo v. Heidelberg Company, 122 N.J. Super. 1 (Law Div. 1972), aff'd sub nom. Van Eeuwen v. Heidelberg Eastern, Inc., 124 N.J. Super. 251 (App.Div. 1973), is misplaced as there the contacts with New Jersey were substantial and continuous, thus providing a fair and reasonable basis for subjecting the foreign manufacturer to in personam jurisdiction. Nor does the fact that the subject machine was still operable in 1978 require the conclusion that LaPointe reasonably could have anticipated being haled into the courts of any state into which the machine found its way. The mechanical life of the machine has no rational relationship to the contacts of its manufacturer with the forum which would support the exercise of personal jurisdiction.
*185 While New Jersey has an interest in assuring its citizens the means of obtaining convenient and effective judicial relief, this interest is only one of the factors to be weighed in considering the reasonableness of exercising personal jurisdiction over nonresidents. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 292, 100 S.Ct. at 564, 62 L.Ed.2d at 498; Corporate Dev. Spe., Inc. v. Warren-Teed Pharm., Inc., 102 N.J. Super. at 149. This is not a determinative consideration in this case as the denial of jurisdiction will not prevent plaintiffs from obtaining effective relief as such action does not affect their claims against the remaining defendants and they may proceed against LaPointe in the Massachusetts courts.
The order of the Superior Court, Law Division, Bergen County, denying the motion of defendant, LaPointe Machine Tool Company, to dismiss the complaint for lack of in personam jurisdiction is reversed and the matter is remanded to that court for further proceedings consistent with this opinion. We do not retain jurisdiction.