929 A.2d 1122 (2007)
395 N.J. Super. 520
Essie WILSON, Plaintiff-Appellant,
v.
PARADISE VILLAGE BEACH RESORT AND SPA, Paradise Vacation Club, Impulsora Canamex, S.A., de C.V., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted January 17, 2007.
Decided August 10, 2007.
*1124 Zavodnick, Perlmutter & Boccia, attorneys for appellant (Mitchell D. Perlmutter, Jersey City, on the brief).
Greenberg Traurig, Florham Park, attorneys for respondents (Richard I. Scharlat, of counsel and on the brief).
Before Judges SKILLMAN, LISA and GRALL.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The primary question presented by this appeal is whether a Mexican resort's participation in advertisements placed by airlines and travel agencies in newspapers distributed in New Jersey and the resort's maintenance of websites that can be accessed by New Jersey residents constitute sufficient contacts with New Jersey for our courts to exercise jurisdiction over a claim that does not arise out of those contacts. We conclude that such promotional activity does not establish the continuous and substantial presence within New Jersey required to establish the general jurisdiction of the New Jersey courts over a nonresident defendant.
On September 11, 2000, plaintiff was injured in a slip and fall accident while at a timeshare resort in Nuevo Vallarta, Mexico, called Paradise Village Beach Resort and Spa (Paradise Village), which is managed by defendant Conjunto Desarrollo Marina Mar S.A. de C.V. (Conjunto), a Mexican corporation. Plaintiff was at the resort as a guest of her daughter, a timeshare owner.
Upon the purchase of a timeshare, an owner automatically becomes a member of defendant Paradise Vacation Club (PVC), a non-profit corporation established to maintain the timeshare and manage reservations for timeshare owners. As a member, plaintiff's daughter has received correspondence from PVC mailed from its California office at her New Jersey address, including maintenance statements, a certificate of membership, and an irrevocable proxy document.
Two years after her accident, plaintiff filed this personal injury action against Conjunto (described in the complaint as "S.A. De C.V.") and other alleged affiliated companies in the Law Division. Before any discovery was conducted, defendants moved to dismiss plaintiff's complaint on the ground that the New Jersey courts lack jurisdiction. In support of this motion, defendants argued that they did not have the continuous and substantial contacts with New Jersey required for the New Jersey courts to exercise jurisdiction over them. In the alternative, defendants argued that plaintiff had signed a registration form when she checked into Paradise Village that contained a forum selection clause under which she agreed to submit any claim against defendants to the jurisdiction of a state in Mexico. The trial *1125 court accepted both arguments and dismissed plaintiff's complaint.
On appeal, we reversed in an unreported opinion on the ground that the trial court should have allowed plaintiff to conduct "jurisdictional discovery" before ruling on defendants' motion and remanded for such discovery. Wilson v. Paradise Village Beach Resort & Spa, No. A-5753-02T5 (decided July 13, 2004).
On remand, plaintiff propounded interrogatories and made a request for the production of documents. In their answers to interrogatories, defendants stated that they do not own any real estate or other property in New Jersey and that none of their officers, directors, agents or employees reside in New Jersey or the New York/New Jersey metropolitan area. Defendants also relied upon their representatives' certifications, filed in support of the original motion to dismiss, which asserted that they do not maintain offices or employees in New Jersey, are not qualified to do business in New Jersey, do not pay any taxes to New Jersey, and have not designated any agent for service of process in New Jersey.
In response to an interrogatory which asked, "During the years 2000-present, what time share exchange programs [have] the defendants belonged to?", defendants responded:
Defendants do not belong to a time share exchange program. Rather, the resort has contracted with Interval International to offer its timeshare members the ability to trade their timeshares with others in the Interval International network. Interval International is an independent company that is not owned or controlled by Defendants.
Defendants' answers to interrogatories also contained statements regarding their participation in advertisements placed in New Jersey newspapers, maintenance of websites, and other contacts with New Jersey, which are quoted and discussed later in this opinion.
Plaintiff did not object to any of defendants' answers to interrogatories or their responses to the request for the production of documents, and she did not seek to depose any of defendants' representatives.
After the completion of jurisdictional discovery, defendants renewed their motion to dismiss plaintiff's complaint for lack of jurisdiction.[1] The trial court concluded in an oral opinion that plaintiff failed to demonstrate that defendants had the continuous and substantial contacts with New Jersey required for our courts to exercise jurisdiction over them. Accordingly, the court granted defendants' motion to dismiss. Although the court did not need to reach the issue, it expressed the opinion that the forum selection clause on the back of the registration form allegedly signed by plaintiff was unenforceable.
We conclude that the trial court properly dismissed plaintiff's complaint on the ground that defendants' contacts with New Jersey are insufficient to support long-arm jurisdiction. This conclusion makes it unnecessary to consider the enforceability of the forum selection clause on the back of the registration form signed by plaintiff.
"Rule 4:4-4, this state's equivalent of a `long-arm statute,' permits service of process on non-resident defendants `consistent with due process of law.'" Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460, 469, 508 A.2d 1127 (1986). Consequently, *1126 this State "allow[s] out-of-state service to the uttermost limits permitted by the United States Constitution." Ibid. (quoting Avdel Corp. v. Mecure, 58 N.J. 264, 268, 277 A.2d 207 (1971)).
"[D]ue Process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940)). In determining whether this test is satisfied, courts distinguish between "specific" and "general" jurisdiction. Compare Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-82, 105 S.Ct. 2174, 2182-87, 85 L.Ed.2d 528, 540-47 (1985) with Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-19, 104 S.Ct. 1868, 1872-74, 80 L.Ed.2d 404, 410-14 (1984). "If a cause of action arises directly out of a defendant's contacts with the forum state, the court's jurisdiction is `specific'." Waste Mgmt., Inc. v. Admiral Ins. Co., 138 N.J. 106, 119, 649 A.2d 379 (1994), cert. denied, 513 U.S. 1183, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995). In such a case, "an isolated act may be sufficient to subject the defendant to the jurisdiction of the forum." Charles Gendler & Co., supra, 102 N.J. at 471, 508 A.2d 1127. But when a cause of action is unrelated to the defendant's contacts with the forum state, the court's jurisdiction is "general" and those contacts "must be so continuous and substantial as to justify subjecting the defendant to [the forum's] jurisdiction." Id. at 472, 508 A.2d 1127.
It is undisputed that this case involves "general jurisdiction" because plaintiff's accident occurred in Mexico and her presence at the resort did not arise out of defendants' contacts with New Jersey. Plaintiff went to the resort as a guest of her daughter, who was a timeshare owner, rather than as a result of any advertising or other marketing activity by defendants in New Jersey. Moreover, the purchase by plaintiff's daughter of a timeshare did not result from any of defendants' contacts with New Jersey. Plaintiff's daughter was first solicited to purchase a timeshare while she was on vacation in Mexico, and the entire sale transaction occurred in Mexico. Although PVC subsequently sent letters and other materials to plaintiff's daughter in New Jersey, there is no indication that plaintiff's visit to the resort resulted from those communications. Thus, unlike Mastondrea v. Occidental Hotels Management S.A., 391 N.J.Super. 261, 268, 918 A.2d 27 (App.Div.2007), this is not a case in which defendants' "minimum contacts [with New Jersey] gave rise to the injury claimed by [plaintiff,]" and for this reason the case does not involve "specific jurisdiction."
If the assertion of jurisdiction over a non-resident defendant rests upon "general jurisdiction," a plaintiff "must show substantially more than mere minimum contacts" with the forum state. Jacobs v. Walt Disney World, Co., 309 N.J.Super. 443, 453, 707 A.2d 477 (App. Div.1998). To establish general jurisdiction, a plaintiff must show that the defendant maintains minimum contacts with the forum state that are "continuous and substantial." Charles Gendler & Co., supra, 102 N.J. at 472, 508 A.2d 1127. Thus, there must be a showing of not only the "nature and quality" but also the "quantity" of the contacts with the forum state. Lakin v. Prudential Secs., Inc., 348 F.3d 704, 712 (8th Cir.2003) (quoting Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, *1127 819 (8th Cir.1994)). "[This] standard for establishing general jurisdiction is `fairly high,' and requires that the defendant's contacts be of the sort that approximate physical presence." Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir.2000) (citation omitted).
Plaintiff's proofs failed to show that defendants have the continuous and substantial contacts with New Jersey required to support a finding of general jurisdiction. It is undisputed that defendants are not qualified to do business in New Jersey and have not designated an agent for service of process in New Jersey. Moreover, defendants have no office or employees, own no real estate or other property, pay no taxes and have no telephone listing in New Jersey. Thus, plaintiff's claim that the New Jersey courts have general jurisdiction over defendants rests solely on PVC's written communications to plaintiff's daughter regarding her timeshare in Mexico and Conjunto's participation in newspaper advertising by airlines and travel agencies and maintenance of websites to encourage patronage of its resort by New Jersey residents.
In response to an interrogatory, defendants provided the following description of PVC's operations:
PVC does not own or control any other entity, or do business as any other entity, specifically not Paradise Village Beach Resort and Spa. PVC is not owned or controlled by any other entity. PVC is an independent non-profit mutual benefit corporation formed solely for the benefit of its members. PVC does not advertise.
PVC does not solicit commercial transactions with PVC members, including those that reside in New Jersey. A member would purchase a resort membership in Nuevo Vallarta, Mexico. The resort does not sell timeshares in the United States. When a timeshare is purchased, the purchaser will become a member of PVC by virtue of the lodging agreement between the resort and PVC. Approximately 5-10 days after receiving the new member's information, PVC will make a "welcome call." After, PVC will deliver an information package that includes, among other things, a welcome letter and membership certificate. Thereafter, from time to time, PVC members will receive by mail a newsletter, maintenance assessments, and a notice of annual meeting of the members. Newsletters are sent out twice per year and a notice of annual meetings takes place once a year. Invoices are sent to members on an as needed basis. Any marketing materials sent by the resort are done so on a per request basis.
In terms of PVC's transactions with its members, all transactions are unilaterally initiated by the PVC member as PVC never contacts its members to solicit timeshare reservations. Accordingly, a PVC member must initiate their reservation by contacting PVC, as well as to get information relating to points management, maintenance assessment payments, general membership services, and address changes.
All reservations are booked by PVC staff in Lake Forest, California.
Plaintiff did not present any evidence that contradicts this description of PVC's operations. The only additional information submitted to the trial court regarding PVC's operations were attachments to plaintiff's certification, which included her daughter's PVC membership certificate, a PVC maintenance statement for the current year, an irrevocable proxy, and a questionnaire to plaintiff's daughter that included an invitation to host a cocktail party in the area for prospective purchasers of timeshares at Paradise Village. Defendants *1128 indicated in their answers to interrogatories that no such cocktail parties or other similar marketing activities had been conducted in New Jersey during the five year period between 2000 and 2004.
We conclude that PVC's mailing of invoices and informational materials to its 350 New Jersey members and its handling of reservations in California on their behalf do not constitute contacts with New Jersey that can support the exercise of general jurisdiction. Even though these contacts could be described as "continuous," they were not in our view "substantial" and they certainly could not be said to "approximate physical presence." Bancroft & Masters, supra, 223 F.3d at 1086.[2]
In response to an interrogatory, defendants provided the following description of Conjunto's advertising of Paradise Village:
PVBRS is a non-juridical entity located in Nuevo Vallarta, Mexico, operated and managed by Conjunto Desarrollo Marina Mar S.A. de C.V., a Mexican Corporation ("Conjunto"). Neither Conjunto, nor any of the other resort entities (i.e., Defendant Impulsora), keeps records of any advertisements or advertisement programs for more than a year. Accordingly, the bulk of Conjunto's records do not evidence advertisements as far back as January 2000.
During the last year, the resort has conducted multiple "co-op" advertising campaigns with travel wholesalers (i.e., American Airlines, Apple Vacations). The travel wholesalers who place the ads, without direction and independent from Conjunto or the Resort, manage these campaigns. Accordingly, if a particular co-op campaign ran in New Jersey, Conjunto had no control over the fact it did.
In addition, in response to plaintiff's request for the production of documents, defendants provided advertisements for Paradise Village published in newspapers. These advertisements were placed by airlines (i.e., American Airlines Vacations) and travel agencies (i.e., Liberty Travel) and contained promotional information regarding various vacation destinations including Paradise Village. The record indicates that Conjunto pays fees to airlines and travel agencies to be included in these advertisements. The record does not indicate the extent of Conjunto's participation in such advertising or, except for one advertisement published in the New York Times and another in the Bergen Record, the newspapers in which the advertisements appeared.
We have recognized that advertising and other marketing activities in New Jersey by a hotel or resort located in another state or country may be sufficient to establish specific jurisdiction over a claim by a New Jersey resident who is enticed by that marketing activity to go to the hotel or resort. See, e.g., Mastondrea, supra, 391 N.J.Super. at 268-77, 918 A.2d 27; Makopoulos v. Walt Disney World, Inc., 221 N.J.Super. 513, 516-19, 535 A.2d 26 (App.Div.1987), certif. denied, 117 N.J. 661, 569 A.2d 1354 (1989); Radigan v. Innisbrook Resort & Golf Club, 142 N.J.Super. 419, 422-25, 361 A.2d 610 (Law Div.1976), aff'd in relevant part, rev'd on unrelated issue, 150 N.J.Super. 427, 430, 375 A.2d 1229 (App.Div.1977). However, we have never held that the limited form of advertising or other marketing activity in New Jersey present in this case would be sufficient, by itself, to establish general jurisdiction. Although it is doubtful *1129 whether the evidence of Conjunto's advertising in New Jersey would support even specific jurisdiction, it is clearly insufficient to support a finding of general jurisdiction. Plaintiff has only shown that Conjunto participates together with numerous other hotels and resorts, which are located not only in Mexico and the Caribbean but also in Europe and Asia, in advertisements placed in newspapers by airlines and travel agencies. Plaintiff has not shown Conjunto purposely targets New Jersey for advertising, the extent of advertising in New Jersey, or the amount of patronage this advertising produces. Nor has plaintiff presented any evidence regarding the renting of rooms at Paradise Village by the airlines and travel agencies that publish these advertisements. Compare Mastondrea, supra, 391 N.J.Super. at 270-71, 918 A.2d 27. Indeed, plaintiff has not even presented any evidence regarding the relationship between the sales of timeshares such as plaintiff's daughter purchased and the marketing of rooms for short-term rentals, which are the subject of the airline and travel agency advertisements. Therefore, we conclude that the evidence of Conjunto's participation in the airline and travel agency advertising programs did not establish the kind of continuous and substantial presence in New Jersey required to support a finding of general jurisdiction.
Plaintiff also relies upon Conjunto's maintenance of websites in support of its claim that the New Jersey courts have general jurisdiction over this defendant. However, the only evidence relating to those websites is a list of fifty-two sites maintained by Conjunto, entries from one of those sites that describe Paradise Village's facilities and prices for accommodations, and a certification by plaintiff's counsel that he made a reservation for a suite through one of the websites. Consequently, there is no indication how much New Jersey business is generated by Paradise Village's websites.
We agree with the federal courts which have held that the mere accessibility of a foreign business's website through which customers may obtain information and place orders is an insufficient contact by itself to support general jurisdiction. See, e.g., Lakin, supra, 348 F.3d at 711-12; Revell v. Lidov, 317 F.3d 467, 470-71 (5th Cir.2002); ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 715-16 (4th Cir.2002), cert. denied, 537 U.S. 1105, 123 S.Ct. 868, 154 L.Ed.2d 773 (2003). In Lakin, the court observed:
[I]n a general jurisdiction case, . . . we consider the "nature and quality of the contacts" as well as the "quantity of the contacts." . . .
. . . [I]t is possible for a Web site to be very interactive, but to have no quantity of contacts. In other words, the contacts would be continuous, but not substantial. This is untenable in a general jurisdiction analysis.
[348 F.3d at 712 (citation omitted).]
The same observation could be made in this case. Moreover, "even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction[.]" Revell, supra, 317 F.3d at 471.
Accordingly, we conclude that the evidence of Conjunto's participation in advertising by airlines and travel agencies and its maintenance of websites is insufficient to support New Jersey's exercise of general jurisdiction over this defendant.
Affirmed.
NOTES
[1] Defendants argued in the prior appeal that plaintiff failed to make valid service of process upon them. We declined to consider the point because it had not been presented to the trial court. On remand, defendants did not pursue the point, and we consider it to have been abandoned.
[2] We also note that there is no evidence PVC plays any role in the actual operation of Paradise Village, so it is difficult to discern any basis for the imposition of liability for plaintiff's slip and fall upon this defendant even if the New Jersey courts had jurisdiction.