PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 14-1483

———————

JAMES C. RICKETTI, D.P.M.,

Appellant

v.

SHAUN P. BARRY; RESTORIXHEALTH; JOHN DOES,
D.P.M, 1-20, said names being fictitious; JOHN ROES, 1-20,
said names being fictitious; JANE DOES, 1-20, said names
being fictitious; ABC COS., 1-20, said names being fictitious;
JANE DOES, D.P.M., 1-20, said names being fictitious

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-13-cv-06804)
District Judge:  Honorable Anne E. Thompson

———————

Argued November 19, 2014

Before:  SMITH, HARDIMAN and BARRY, *Circuit Judges*.

(Filed: January 7, 2015)

Ralph B. Crelin, Esq. [Argued]
Robert J. Conroy, Esq.
Daniel G. Giaquinto, Esq.
Kern, Augustine, Conroy & Schoppmann
1120 Route 22 East
Bridgewater, NJ 08807
	*Counsel for Appellant*

Robert M. Travisano, Esq. [Argued]
Daniel R. Levy, Esq.
Epstein, Becker & Green
One Gateway Center
Newark, NJ 07102
	*Counsel for Appellees*

---

## OPINION OF THE COURT

---

HARDIMAN, *Circuit Judge*.

James Ricketti appeals an order of the United States District Court for the District of New Jersey dismissing his civil action against Shaun Barry and RestorixHealth. The Court dismissed the suit pursuant to New Jersey's entire controversy doctrine, a state rule of procedure that discourages successive litigation concerning the same subject matter. Because the District Court did not conduct the inquiry required by New Jersey law, we will vacate its order and remand the case for further proceedings.

I

Dr. Ricketti, a podiatrist based in Hamilton Township, New Jersey, hired Dr. Michael Plishchuk in 2008 to work as an associate. In addition to maintaining his own practice, Ricketti treated patients at a local wound care center run by Shaun Barry on behalf of his employer, RestorixHealth (formerly the Center for Wound Healing, Inc.). Ricketti regularly sent Plishchuk to the wound care center to treat patients.

Ricketti terminated Plishchuk's employment in July 2012 for allegedly failing to comply with certain legal and regulatory requirements. According to Ricketti, Plishchuk continued treating Ricketti's patients at the wound care center even after he was fired, which deprived Ricketti "of revenue to which he was entitled for the treatment rendered to these patients." App. 12. After Plishchuk stopped treating patients at the center, Barry allegedly prevented Ricketti from practicing there because all of his patients had been healed.

Ricketti sued Plishchuk in New Jersey state court later in July 2012, claiming breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with economic advantage, breach of the duty of loyalty, and conversion. His complaint was based primarily on Plishchuk's alleged diversion of patients at the wound care center to himself and his interference with the treatment of patients at the center by Ricketti's other associates. The suit also included claims based on the grounds for Ricketti's termination of Plishchuk's employment. Critical to this appeal, Ricketti did not join Barry or RestorixHealth in his first case, nor did he inform the state court that they should have been joined. App. 99, 121 (twice certifying pursuant to New Jersey Rule of Court 4:5-1 that "no other party should be

3

joined in this action"). In May 2013, Ricketti and Plishchuk reached a confidential settlement after a court-ordered mediation.

Ricketti filed a second suit in state court in September 2013, this time naming Barry and RestorixHealth as defendants and omitting Plishchuk. Although Ricketti contends that this action was very different from the first, Ricketti Br. 7–8, the complaints sought relief under the same common law causes of action and averred mostly the same supporting facts, *see* Barry Br. 10–11 (side-by-side comparison of the complaints' allegations). Defendants removed the case to federal court on the basis of diversity of citizenship and filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Defendants argued that New Jersey's entire controversy doctrine barred the suit and, in the alternative, that Ricketti had not pleaded the elements required for each of his claims.

The District Court granted the motion and dismissed the case. The Court concluded that the entire controversy doctrine barred Ricketti's second suit because his "claims against Defendants are substantially the same as the claims advanced in the original litigation" and "[b]oth matters arise out of the same contractual provisions and obligations as well as the same actions." *Ricketti v. Barry*, 2014 WL 546350, at *3 (D.N.J. Feb. 10, 2014). Barry and RestorixHealth would be prejudiced if forced to defend the suit, the Court found, because they "were prevented from participating in the original proceeding which involved substantially the same facts and issues." *Id.* The District Court did not reach Defendants' other arguments for dismissal under Rule 12(b)(6). Ricketti appealed.

4

The District Court had removal jurisdiction under 28 U.S.C. § 1441 because it would have had diversity jurisdiction from the start under 28 U.S.C. § 1332(a)(1).[1] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## II

Our review of a district court's application of the entire controversy doctrine is plenary. *Venuto v. Witco Corp.*, 117 F.3d 754, 758 (3d Cir. 1997).

## A

We have described the entire controversy doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). A mainstay of New Jersey civil procedure, the doctrine encapsulates the state's longstanding policy judgment that "the adjudication of a legal controversy should occur in one litigation in only one court[.]" *Cogdell v. Hosp. Ctr. at*

---

[1] There was complete diversity of citizenship among the parties, Ricketti being a citizen of New Jersey, Barry of Pennsylvania, and RestorixHealth of Nevada (its state of incorporation) and New York (the location of its principal place of business). And although the complaint did not state an amount in controversy, the parties seem to agree that it exceeds $75,000 because Ricketti seeks compensation for "substantial" lost revenue, as well as punitive damages. App. 23; *see Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993) ("[P]unitive damages are properly considered in determining whether the jurisdictional amount has been satisfied.").

*Orange*, 560 A.2d 1169, 1172 (N.J. 1989); *see also* N.J. Const. art. VI, § 3, ¶ 4 ("[L]egal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined."); *Smith v. Red Top Taxicab Corp.*, 168 A. 796, 797 (N.J. 1933) ("No principle of law is more firmly established than that a single or entire cause of action cannot be subdivided into several claims, and separate actions maintained thereon."). Like its "blood relative[]" res judicata, the entire controversy doctrine is an affirmative defense, *Rycoline Prods.*, 109 F.3d at 886, and it applies in federal courts "when there was a previous state-court action involving the same transaction," *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991). Unsurprisingly, the doctrine has appeared with some frequency in our Court and in the District Court. *See, e.g.*, *Fornarotto v. Am. Waterworks Co.*, 144 F.3d 276 (3d Cir. 1998); *Heir v. Del. River Port Auth.*, 218 F. Supp. 2d 627, 632 (D.N.J. 2002).

The contours of the entire controversy doctrine have changed over time. Although it first applied only to joinder of claims, the New Jersey Supreme Court in *Cogdell* expanded it to include mandatory joinder of parties as well. *Mitchell v. Procini*, 752 A.2d 349, 352 (N.J. Super. Ct. App. Div. 2000) (citing *Cogdell*, 560 A.2d at 1178). The holding in *Cogdell* was later codified in New Jersey Rule of Court 4:30A, which then provided: "Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine[.]" *Rycoline Prods.*, 109 F.3d at 885. The party joinder component was criticized, and the New Jersey Supreme Court referred the matter to its Civil Practice Committee to consider revisions. *See Olds v. Donnelly*, 696 A.2d 633, 644–46 (N.J. 1997). In doing so, the

6

court laid the groundwork for the changes to come by "emphasiz[ing] that preclusion is a remedy of last resort" and stating: "If a remedy other than preclusion will vindicate the cost or prejudice to other parties and the judicial system, the court should employ such a remedy." *Id.* at 645.

In September 1998, the New Jersey Supreme Court amended Rule 4:30A to eliminate the party joinder requirement. *Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 25 A.3d 1027, 1035–36 (N.J. 2011). At the same time, it moved the party joinder regime to Rule 4:5-1(b)(2), which now provides:

> [E]ach party shall disclose . . . the names of any non-party who should be joined in the action . . . because of potential liability to any party on the basis of the same transactional facts. . . . If a party fails to comply with its obligations under this rule, the court may impose an appropriate sanction including dismissal of a successive action against a party whose existence was not disclosed or the imposition on the noncomplying party of litigation expenses that could have been avoided by compliance with this rule. A successive action shall not, however, be dismissed for failure of compliance with this rule unless the failure of compliance was inexcusable and the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action.

Thus, since 1998, automatic preclusion of a successive suit has not been the appropriate sanction in New Jersey for failure to join a defendant in an earlier action concerning the

7

same subject matter. The rules now contemplate less draconian sanctions if they will suffice and dismissal only if the noncompliance was "inexcusable" and "the right of the undisclosed party to defend" a successive action was "substantially prejudiced." N.J. Ct. R. 4:5-1(b)(2).[2]

The crux of Ricketti's appeal is that the District Court failed to conduct the inquiry that New Jersey's rules have required since the doctrine was altered in 1998. For the reasons that follow, we agree.

## B

The record shows that the District Court applied the entire controversy doctrine as it existed before New Jersey altered its party joinder rules in 1998. The Court neither cited Rule 4:5-1(b)(2) nor mentioned sanctions short of dismissal.[3]

---

[2] The parties dispute whether the entire controversy doctrine still includes party joinder—a disagreement also discernible in caselaw discussing the doctrine. *Compare Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 n.1 (3d Cir. 1999) ("The party joinder aspect of the doctrine . . . has now been eliminated."), *with Heir*, 218 F. Supp. 2d at 632 (rooting the doctrine in "several of the New Jersey Rules of Court," including Rules 4:30A and 4:5-1(b)(2)). This is a semantic quarrel we need not settle; the point is that litigants invoking claim joinder as a basis for preclusion must turn to Rule 4:30A and those invoking party joinder must turn to Rule 4:5-1(b)(2).

[3] Such sanctions may include the imposition of litigation costs on the noncomplying party, as well as any others that the court finds "appropriate." N.J. Ct. R. 4:5-1(b)(2); *see Kent Motor Cars*, 25 A.3d at 1037.

Although the Court reviewed cases involving the entire controversy doctrine, those cases either predated the 1998 modifications[4] or neglected to mention them.[5] As written, the District Court's opinion suggests that New Jersey's court rules require automatic dismissal of a successive suit concerning the same subject matter, even though we noted the 1998 alterations to the entire controversy doctrine soon after they were implemented. *See Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 n.1 (3d Cir. 1999).

Outright dismissal of a civil action for failure to comply with Rule 4:5-1(b)(2) is appropriate only when: (1) the suit is a "successive action"; (2) the plaintiff's failure to disclose the existence of other potentially liable parties in the earlier litigation was "inexcusable"; and (3) the undisclosed parties' right to defend the successive action was "substantially prejudiced" by their omission. *Kent Motor Cars*, 25 A.3d at 1034; N.J. Ct. R. 4:5-1(b)(2). Even assuming *arguendo* that the District Court tacitly analyzed the first two requirements and found them satisfied here, it did not make the finding of *substantial* prejudice required by Rule 4:5-1(b)(2) to justify dismissal. Instead, the Court found that Defendants were "prejudiced" merely because they were omitted from the Plishchuk action. *Ricketti*, 2014 WL

---

[4] *See, e.g.*, *Bernardsville Quarry v. Borough of Bernardsville*, 929 F.2d 927, 930 (3d Cir. 1991); *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995).

[5] All of the cases in this latter group were nonbinding, and some did not involve party joinder. *See, e.g.*, *Great W. Mining & Mineral Co. v. ADR Options, Inc.*, 533 F. App'x 132, 135 (3d Cir. 2013).

546350, at *3. Although we express no view as to whether this or any other forms of prejudice inflicted upon Barry and RestorixHealth may justify dismissal of Ricketti's action against them, we note that the "substantial prejudice" prong of Rule 4:5-1(b)(2) requires a showing of more than mere inconvenience to the parties. *See, e.g.*, *Ctr. for Prof'l Advancement v. Mazzie*, 347 F. Supp. 2d 150, 156 (D.N.J. 2004) ("Substantial prejudice, as contemplated by Rule 4:5-1(b)(2), means that a person not joined in an earlier action will be seriously harmed in his or her ability to maintain an adequate defense in a subsequent action."); *Kent Motor Cars*, 25 A.3d at 1039–40 (holding that the destruction of potentially relevant evidence before the filing of the successive action did not give rise to substantial prejudice); *Mitchell*, 752 A.2d at 355 (characterizing substantial prejudice as involving "specific difficulties in mounting a defense . . . significantly different from [those] normally encountered").

## III

For the reasons stated, we will vacate the District Court's order dismissing Ricketti's action against Barry and RestorixHealth and remand the matter for further proceedings. On remand, the District Court should evaluate the party joinder issue under the summary judgment standard. *See Rycoline Prods.*, 109 F.3d at 886 (holding that a motion to dismiss that relies on an entire-controversy defense not appearing on the face of the complaint must be denied without prejudice or converted to a motion for summary judgment under Federal Rule of Civil Procedure 12(d)). The District Court should enter judgment for Defendants on party joinder grounds only if the Court finds that this is a successive action, that Ricketti's failure to disclose Defendants as potentially liable parties in the Plishchuk

10

action was inexcusable, and that this omission substantially prejudiced Defendants' right to defend this action. *See* N.J. Ct. R. 4:5-1(b)(2). If that test is not satisfied, the Court may consider other appropriate sanctions for any prejudice Barry and RestorixHealth might have suffered as a result of their omission from Ricketti's first suit. And finally, if judgment for Defendants is not warranted on party joinder grounds, the District Court should consider whether it is warranted on any of the other grounds Defendants raised in their motion to dismiss.